**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| DECKERS OUTDOOR CORPORATION, )<br><br>Plaintiff, )<br>v. )<br><br>THE PARTNERSHIPS and )<br>UNINCORPORATED ASSOCIATIONS )<br>IDENTIFIED ON SCHEDULE "A," )<br><br>Defendants. )<br>) | Case No. 14-cv-7257<br><br>**Judge Ronald A. Guzman**<br><br>**Magistrate Judge Daniel G. Martin** |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR**
**ENTRY OF DEFAULT AND DEFAULT JUDGMENT AGAINST THE DEFENDANTS**
**IDENTIFIED IN SECOND AMENDED SCHEDULE A, WITH THE EXCEPTION OF**
**CERTAIN DEFENDANTS**

Plaintiff Deckers Outdoor Corporation ("Deckers") submits the following memorandum in support of its Motion for Entry of Default and Default Judgment under Fed. R. Civ. P. 55 against the Partnerships and Unincorporated Associations identified on Second Amended Schedule A[1], with the exception of certain defendants[2] (collectively, the "Defaulting Defendants") based on Deckers' action for trademark infringement, counterfeiting, false designation of origin, cybersquatting and violation of the Illinois Uniform Deceptive Trade Practices Act.

---

[1] Second Amended Schedule A reflects the voluntary dismissal of Defendant Domain Name stmarysabc.co.uk on line 154 of the Defendant Domain Names section of Amended Schedule A and associated with the Defendant/Registrant Name Jin Zheng Trading Co., Ltd. Xiamen on line 26 of the Defendant Domain Names Registrants section of Amended Schedule A on October 31, 2014 (Docket No. 49), and the voluntary dismissal of Online Marketplace Account aliexpress.com/store/737569 associated with the Account Name Savouring Fashion Life and the Email Address jx-198410@163.com on line 35 of the Online Marketplace Accounts section of Amended Schedule A on November 4, 2014 (Docket No. 51).

[2] Deckers' Motion for Entry of Default and Default Judgment does not apply to the Online Marketplace Accounts identified with the following Account Names in Second Amended Schedule A to the Complaint: digitalzone88 associated with the PayPal email address digitalzone889@gmail.com (line 47); easyshopping678 associated with the PayPal email address easytrade2088@gmail.com (line 48); happydeal88 associated with the PayPal email address niceforu365@gmail.com (line 49); wellchange associated with the PayPal email address elerose99@gmail.com (line 61); and your365shop associated with the PayPal email address kelvinkaka88@gmail.com (line 63).

## STATEMENT OF FACTS

Deckers is well-known throughout the United States and elsewhere as a source of high quality footwear products, including the famous UGG® brand of premium sheepskin footwear. Complaint, Docket Entry 1 at ¶ 4. Deckers holds registrations for the UGG trademarks (and stylized variations thereof) in more than 100 countries around the world, including, but not limited to, several United States Registrations (collectively, the "UGG Trademarks"). *Id*. at ¶ 6. Additional factual assertions regarding Deckers in Paragraphs 4 – 7 of the Complaint are incorporated herein. *Id*. at ¶¶ 4 – 7.

On information and belief, Defaulting Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products bearing counterfeit versions of the UGG Trademarks (the "Counterfeit UGG Products"). *Id*. at ¶ 9. Defaulting Defendants conduct business throughout the United States, including within the State of Illinois and this Judicial District, through the operation of the fully interactive commercial websites and online marketplaces operating under the Defendant Domain Names and Online Marketplace Accounts (collectively, the "Defendant Internet Stores") identified in Second Amended Schedule A. *Id*. at ¶ 8. Each Defaulting Defendant targets Illinois residents and has offered to sell, and on information and belief, has sold and continues to sell Counterfeit UGG Products to consumers within the State of Illinois. *Id*. Additional factual assertions that are applicable to Defaulting Defendants in Paragraphs 8 – 17 of the Complaint are incorporated herein. *Id.* at ¶¶ 8-17.

Deckers filed this action on September 17, 2014, alleging federal trademark infringement and counterfeiting (Count I), false designation of origin (Count II), cybersquatting (Count III) and violation of the Illinois Uniform Deceptive Trade Practices Act (Count IV) and seeks statutory

damages and injunctive relief.  (Docket Entry 1).  On September 24, 2014, this Court granted Deckers' *Ex Parte* Motion for Entry of a Temporary Restraining Order (the "TRO") and subsequently converted the TRO into a Preliminary Injunction.  (Docket Entries 30 and 47).

Paragraph 9 of the TRO permitted Deckers to complete service of process to Defendants by electronic mail at the e-mail addresses identified in Schedule A to Deckers' Complaint or electronic publication at the Defendant Domain Names which were transferred to Deckers' control. The Defendants were properly served on or before October 14, 2014.  (Docket Entry 42).  None of the Defaulting Defendants have entered an appearance or otherwise defended this action.  *See* Declaration of Justin R. Gaudio (the "Gaudio Declaration") at ¶ 2.

Pursuant to Federal Rule of Civil Procedure 55(a) and (b)(2), Deckers now moves this Court for an Order entering default and default judgment finding that Defaulting Defendants are liable on all counts of Deckers' Complaint. Fed. R. Civ. P. 55(a) and (b)(2).  Deckers further seeks an award of statutory damages as authorized by 15 U.S.C. § 1117(c)(2) for willful trademark counterfeiting against each of the Defaulting Defendants for use of counterfeit UGG Trademarks on products sold through each of the Defendant Internet Stores.  Deckers also seeks entry of a permanent injunction prohibiting Defaulting Defendants from selling Counterfeit UGG Products, an Order that the domain names used by Defaulting Defendants to sell Counterfeit UGG Products be permanently transferred to Deckers, and that all assets in Defaulting Defendants' financial accounts operated by PayPal, Inc., as well as any newly discovered assets, be transferred to Deckers.

## ARGUMENT

## I.    JURISDICTION AND VENUE ARE PROPER IN THIS COURT

This Court has original subject matter jurisdiction over the claims in this action pursuant

3

to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq., 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.  This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in Illinois and causes harm to Deckers' business within this Judicial District.  *See* Complaint at ¶¶ 2, 8, 16 and 17; *uBID, Inc. v. GoDaddy Grp., Inc*. 623 F.3d 421, 423-24 (7th Cir. 2010) (without benefit of an evidentiary hearing, plaintiff bears only the burden of making a prima facie case for personal jurisdiction; all of plaintiff's asserted facts should be accepted as true and any factual determinations should be resolved in its favor).

Through at least the fully interactive commercial Internet websites and online marketplace accounts operating under the Defendant Internet Stores, each of the Defaulting Defendants has targeted sales from Illinois residents by operating websites and/or online marketplace accounts that offer shipping to Illinois and, on information and belief, has sold Counterfeit UGG Products to residents of Illinois.  Many of the websites are sophisticated-looking, written in English, and accept payment in U.S. Dollars.  As such, personal jurisdiction is proper since each of the Defaulting Defendants is committing tortious acts in Illinois, is engaging in interstate commerce and has wrongfully caused Deckers substantial injury in the State of Illinois.  *See True Religion Apparel, Inc., et al. v. Does 1-100,* No. 1:12-cv-9894 (N.D. Ill. Feb. 6, 2013) (unpublished) (Docket Nos. 42 and 43); *Deckers Outdoor Corp. v. Does 1-55,* No. 1:11-cv-00010 (N.D. Ill. Oct. 14, 2011) (unpublished) (Docket Nos. 68 and 69).

## II.    DECKERS HAS MET THE REQUIREMENTS FOR ENTRY OF DEFAULT

Pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). On September 17, 2014, Deckers filed its Complaint alleging federal trademark infringement and counterfeiting, 15 U.S.C. § 1114 (Count I), false designation of origin, 15 U.S.C. § 1125(a) (Count II), cybersquatting, 15 U.S.C. § 1125(d) (Count III) and violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510 (Count IV). (Docket Entry 1). The Defendants were properly served on October 14, 2014. (Docket Entry 42). Despite having been served with process, the Defaulting Defendants have ignored these proceedings and failed to plead or otherwise defend this action. (Gaudio Declaration at ¶ 2). Upon information and belief, the Defaulting Defendants are not active-duty members of the U.S. armed forces. (*Id.* at ¶ 3). Accordingly, Deckers asks for entry of default against the Defaulting Defendants.

## III.    DECKERS HAS MET THE REQUIREMENTS FOR ENTRY OF DEFAULT JUDGMENT

Rule 55(b)(2) of the Federal Rules of Civil Procedure provides for a court-ordered default judgment. A default judgment establishes, as a matter of law, that defendants are liable to plaintiff on each cause of action alleged in the complaint. *United States v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989). When the Court determines that a defendant is in default, the factual allegations of the complaint are taken as true and may not be challenged, and the defendants are liable as a matter of law as to each cause of action alleged in the complaint. *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994).

As noted above, Deckers served Defendants on October 14, 2014. More than twenty-one (21) days have passed since Defendants were served, and no answer or other responsive pleading

has been filed by any of the Defaulting Defendants. *See* Fed. R. Civ. P. 12(a)(1)(A). Accordingly, default judgment is appropriate, and consistent with previous similar cases in front of this Court, Deckers requests an award of statutory damages as authorized by 15 U.S.C. § 1117(c)(2) for willful trademark counterfeiting against each of the Defaulting Defendants for use of counterfeit UGG Trademarks on products sold through the Defendant Internet Stores[3]. Deckers also seeks entry of a permanent injunction prohibiting Defaulting Defendants from selling Counterfeit UGG Products, an order that domain names used by Defaulting Defendants to sell Counterfeit UGG Products be permanently transferred to Deckers, and that all assets in Defaulting Defendants' financial accounts operated by PayPal, Inc. and any newly identified accounts be transferred to Deckers.

### A. Trademark Infringement and Counterfeiting

To properly plead a claim of trademark infringement and counterfeiting pursuant to the Lanham Act, a plaintiff must allege that (1) its mark is distinctive enough to be worthy of protection, (2) defendants are not authorized to use the mark; and (3) defendant's use of the mark causes a likelihood of confusion as to the origin or sponsorship of defendant's products. *See Neopost Industrie B.V. v. PFE Int'l Inc.,* 403 F. Supp. 2d 669, 684 (N.D. Ill. 2005) (citing *Bliss Salon Day Spa v. Bliss World LLC,* 268 F.3d 494, 496-97 (7th Cir. 2001)).

Deckers alleged in its Complaint that its UGG Trademarks are highly distinctive, that Defaulting Defendants have knowledge of Deckers' rights in the UGG Trademarks, that Defaulting Defendants are not authorized to use the UGG Trademarks, and that Defaulting Defendants' use of the UGG Trademarks causes a likelihood of confusion. Complaint at ¶¶ 19-21. Since the Defaulting Defendants have failed to respond or otherwise plead in this matter, the Court must accept the allegations contained in Deckers' Complaint as true. *See* Fed. R. Civ. P.

---

[3] Deckers is not seeking additional statutory damages of up to $100,000 per domain name to which it is also entitled for violations of 15 U.S.C. § 1125(d) (Count III), even though this was included in its prayer for relief in the Complaint.

8(b)(6); *Am. Taxi Dispatch, Inc., v. Am. Metro Taxi & Limo Co.,* 582 F. Supp. 2d 999, 1004 (N.D. Ill. 2008). Accordingly, Deckers requests entry of judgment with respect to Count I for willful infringement and counterfeiting of the UGG Trademarks against the Defaulting Defendants.

### B. False Designation of Origin

A plaintiff bringing a false designation of origin claim under 15 U.S.C. § 1125(a) must show that: (1) the plaintiff has a protectable trademark; and (2) a likelihood of confusion will exist as to the origin of plaintiff's products. *All Star Championship Racing, Inc. v. O'Reilly Auto. Stores, Inc.,* 2013 WL 1701871, *10 (C.D. Ill. Apr. 18, 2013) (*citing Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.,* 188 F. 3d 427, 436 (7th Cir. 1999)). This is the same test that is used for bringing a trademark infringement claim under the Lanham Act. *See Neopost,* 403 F. Supp. 2d at 684.

Deckers alleges in its Complaint that Defaulting Defendants are using the federally registered UGG Trademarks without authorization on the Counterfeit UGG Products. Complaint at ¶¶ 11, 13, and 16. As such, this creates a likelihood of confusion, mistake, and deception among the general public as to the affiliation or sponsorship of Defaulting Defendants' Counterfeit UGG Products with Deckers' genuine UGG Products. *Id.* at ¶ 26. Furthermore, by using counterfeits of Deckers' UGG Trademarks on the Counterfeit UGG Products, Defaulting Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit UGG Products. *Id.* at ¶ 27. As such, Deckers requests entry of judgment with respect to Count II for willful false designation of origin against the Defaulting Defendants.

### C. Cybersquatting

In order to state a claim under the Anticybersquatting Consumer Protection Act, a plaintiff must allege that (1) it had a distinctive or famous mark at the time the domain names were

registered, (2) the defendants registered, trafficked in, or used domain names that are identical or confusingly similar to plaintiff's mark, and (3) the defendants had bad faith intent to profit from that mark. 15 U.S.C. § 1125(d)(1)(A); *see also Vulcan Golf, LLC v. Google, Inc.*, 552 F. Supp. 2d 752, 763 (N.D. Ill. 2008).

Deckers' Complaint alleges that Deckers owns the exclusive rights to the UGG Trademarks, registrations for which are in full force and effect, and which are highly distinctive and famous marks pursuant to 15 U.S.C. § 1125. Complaint at ¶ 31. Deckers further alleges that the Defaulting Defendants have acted with bad faith intent to profit from the UGG Trademarks and the goodwill associated with the UGG Trademarks by registering domain names that are identical or confusingly similar to or dilutive of the UGG Trademarks. *Id.* at ¶ 32. As such, Deckers requests entry of judgment against the Defaulting Defendants with respect to Count III for willful cybersquatting as to the domain names incorporating any of the UGG Trademarks.

### D. Violation of the Illinois Uniform Deceptive Trade Practices Act

In Illinois, courts resolve unfair competition and deceptive trade practices claims "according to the principles set forth in the Lanham Act." *Spex, Inc. v. The Joy of Spex, Inc.*, 847 F. Supp. 567, 579 (N.D. Ill. 1994). Illinois courts look to federal case law and apply the same analysis to state infringement claims. *Id.* (citation omitted). As such, the determination as to whether there is a likelihood of confusion under the Illinois Uniform Deceptive Trade Practices Act is similar to the Lanham Act analysis. *Am. Broad. Co. v. Maljack Prods., Inc.*, 34 F. Supp. 2d 665, 681 (N.D. Ill. 1998).

Deckers alleged in its Complaint that Defaulting Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their products as those of Deckers, causing a likelihood of confusion and/or misunderstanding as to the source of their goods, causing a

likelihood of confusion and/or misunderstanding as to affiliation, connection, or association with Deckers' genuine UGG Products, representing that their Counterfeit UGG Products have Deckers' approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public. Complaint at ¶ 37. Deckers, therefore, requests entry of judgment with respect to Count IV of its Complaint for willful violation of the Illinois Uniform Deceptive Trade Practices Act against Defaulting Defendants.

## IV.    DECKERS IS ENTITLED TO MONETARY AND INJUNCTIVE RELIEF

The awarding of statutory damages serves dual interests in that it is remedial in nature, but also intended to protect an important public interest. Given the broader economic losses and harm to the job market caused by counterfeiting, coupled with the possible dangers to consumers who are tricked into purchasing low quality, counterfeit products over the Internet, it is important to both penalize defendants and try to deter future violations.

Deckers expends millions of dollars annually to advertise and promote the UGG brand. Docket Entry 15 at ¶ 6 and 7. As a result, Deckers' UGG brand has achieved annual sales of over $1 billion since 2011, including sales of over $1.299 billion in 2013. *Id.* at ¶ 10. Deckers' uggaustralia.com website is extraordinarily successful, with 2013 e-commerce UGG brand sales totaling over $155 million. *Id.* at ¶ 12. The success of the UGG brand has resulted in its significant counterfeiting, so Deckers has instituted a worldwide anti-counterfeiting program and regularly conducts investigations to root out counterfeiting activity. *Id.* at ¶ 17.

### A.  Statutory Damages Are Appropriate in this Case

Pursuant to the statutory damages provision of the Lanham Act, 15 U.S.C. § 1117(c), a plaintiff in a case involving the use of a counterfeit mark may elect to receive "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or

distributed, as the court considers just." 15 U.S.C. § 1117(c)(1). When the counterfeiting is found to be willful, 15 U.S.C. § 1117(c)(2) provides for statutory damages of up to "$2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(2).

The lack of information regarding Defaulting Defendants' sales and profits makes statutory damages particularly appropriate for default cases like the instant case. *See Petmed Express, Inc. v. medpets.com, Inc.,* 336 F. Supp. 2d 1213, 1220 (S.D. Fla. 2004). Likewise, Courts have recognized that statutory damages should be awarded without requiring an evidentiary hearing. *See Lorillard Tobacco Co. v. Montrose Wholesale Candies & Sundries, Inc.*, 2008 U.S. Dist. LEXIS 31761, *11 (N.D. Ill. Apr. 17, 2008).

### B. Defendants' Counterfeiting Was Willful

As alleged in Deckers' Complaint, Defaulting Defendants facilitated sales by designing their Defendant Internet Stores so that they appeared to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine UGG Products. Docket Entry 1 at ¶ 11.

Pursuant to 15 U.S.C. § 1117(e), a counterfeiting violation is presumed willful "for purposes of determining relief if the violator ... knowingly provided ... materially false contact information to a domain name registrar...." 15 U.S.C. § 1117(e). Many of Defaulting Defendants' names and addresses used to register the Defendant Internet Stores are incomplete, contain randomly typed letters, or fail to include cities or states. Docket Entry 1 at ¶ 14. Thus, willfulness is presumed in the instant case under 15 U.S.C. § 1117(e).

Even without the statutory presumption, it is clear that Defaulting Defendants' counterfeiting was willful. "Willful infringement may be attributed to the defendant's actions

where he had knowledge that his conduct constituted infringement or where he showed a reckless disregard for the owner's rights." *Lorillard Tobacco Co. v. S & M Cent. Serv. Corp.,* 2004 LEXIS 22563, *19-20 (N.D. Ill. Feb. 25, 2005). As such, knowledge need not be proven directly, but can be inferred from a defendant's conduct. *Id.* at 20. In the instant case, Defaulting Defendants clearly had knowledge that their activities constituted infringement or at least a reckless disregard for Deckers' rights in the UGG Trademarks. After all, the Defaulting Defendants were copying content directly from Deckers' official UGGAustralia.com website while taking great pains to hide their identities to try to avoid being held accountable for their counterfeiting activities. Docket Entry 1 at ¶¶ 11, 14, and 15; *see also* Docket Entries 26-27, 28.

Finally, District Courts have deemed counterfeiting willful when defendants default. *See True Religion Apparel, Inc., et al. v. Does 1-100,* No. 1:12-cv-9894 (N.D. Ill. Feb. 6, 2013) (unpublished) (Docket No. 43); *Oakley, Inc. v. Does 1-100,* No. 1:12-cv-9864 (N.D. Ill. Jan. 30, 2013) (unpublished) (Docket No. 32).

### C. A High Statutory Damages Award Is Appropriate and Just

Although 15 U.S.C. § 1117(c) contains the dollar range for possible statutory damage awards, the only guidance provided by the statute for how to determine a damage award within the statutory dollar range is "as the court considers just." 15 U.S.C. § 1117(c). Courts interpreting 15 U.S.C. § 1117(c) have analogized case law applying the statutory damage provision of the Copyright Act contained in 17 U.S.C. § 504(c). *See Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, *10; *Sara Lee v. Bags of New York, Inc.*, 36 F. Supp. 2d 161, 166 (S.D.N.Y. 1999).

The Seventh Circuit's standard for awarding statutory damages for copyright infringement under 17 U.S.C § 504(c) is articulated in *Chi-Boy Music v. Charlie Club*, 930 F.2d 1224, 1229 (7th Cir. 1991). Under the *Chi-Boy* standard, a court awarding statutory damages is "not required to

11

follow any rigid formula," but instead "enjoys wide discretion." *Id.* In computing the award amount, a court may consider factors such as "the difficulty or impossibility of proving actual damages, the circumstances of the infringement, and the efficacy of the damages as a deterrent." *Id.* Courts in this district have also considered the significant value of a plaintiff's brand and the efforts taken to protect, promote and enhance that brand in determining the appropriate dollar figure for the award. *Lorillard Tobacco Co.,* 2004 U.S. Dist. LEXIS 22563, *16.

In addition, courts have awarded high damage amounts where a defendant's counterfeiting activities attracted wide market exposure through Internet traffic or advertisement. *See Coach, Inc. v. Ocean Point Gifts*, 2010 U.S. Dist. LEXIS 59003, *15-16 (D.N.J. Jun. 14, 2010) (high damage awards in counterfeit cases were "due in part to the wide market exposure that the Internet can provide"); *Burberry Ltd. v. Designers Imports, Inc.*, 2010 U.S. Dist. LEXIS 3605, *28-29 (S.D.N.Y. Jan. 19, 2010) (damages amount based, in part, on "Defendant's ability to reach a vast customer base through internet advertising").

In similar cases involving willful Internet-based counterfeiting, courts have awarded significant damages, including up to the maximum provided by law, to the plaintiff to serve the purposes of: (1) deterring the defendant and others situated like him from bringing into commerce counterfeit goods, (2) compensating the plaintiff for damages caused by defendant's infringement, and (3) punishing the defendant appropriately for his counterfeiting activities. *See, e.g., Philip Morris U.S.A. Inc. v. Castworld Prods.*, 219 F.R.D. 494, 501 (C.D. Cal. 2003); *Oakley, Inc. v. Does 1-100,* No. 1:12-cv-9864 (N.D. Ill. Jan. 30, 2013) (unpublished) (Docket No. 32) (awarding $2,000,000 in statutory damages per defendant); *Coach, Inc. v. Does 1-573,* No. 1:12-cv-1514 (N.D. Ill. Oct. 15, 2012) (unpublished) (Docket No. 27) (awarding $2,000,000 in statutory damages per defendant); *Deckers Outdoor Corp. v. Does 1-1,281,* No. 1:12-cv-01973 (N.D. Ill.

12

June 29, 2012) (unpublished) (Docket No. 23) (awarding $2,000,000 in statutory damages per defendant). Given the Court's clear discretion in determining the appropriate amount of the statutory damages award within the statutory limits of 15 U.S.C. § 1117(c), Deckers respectfully requests the Court's entry of an award of two million dollars ($2,000,000) per Defaulting Defendant.

Additionally, the remedy imposed under the statute must provide a sufficient deterrent effect to ensure that the guilty party will not engage in further infringing conduct. *Sands, Taylor & Wood v. Quaker Oats Co.,* 34 F.3d 1340, 1348 (7th Cir. 1994). For example, in *Phillip Morris USA Inc. v. Marlboro Express*, the Court stated that due to, "the size of the potential profit given the quantities of [counterfeit goods] involved, and the need for a substantial deterrent to future misconduct by defendants and other counterfeit traffickers ... plaintiff is entitled to the maximum statutory award under 15 U.S.C. § 1117(c)(2)." 2005 U.S. Dist. LEXIS 40359, *28 (E.D.N.Y. Aug. 26, 2005).

Finally, in determining an appropriate damage award, this Court should be guided by the *Lorillard* case and consider the "significant value of [the UGG] brand and the efforts taken to protect, promote and enhance that brand." *Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, *16. The UGG brand is a billion dollar brand, and Deckers spends considerable resources marketing and protecting it. Docket Entry 15 at ¶¶ 6, 7 and 10. Thus, Deckers' request for a high statutory damages award should be given favorable consideration in view of the value of the UGG brand and the extensive steps being taken by Deckers to protect, promote and enhance it.

### D. Deckers Is Entitled to Permanent Injunctive Relief

In addition to the foregoing relief, Deckers respectfully requests entry of a permanent injunction enjoining Defaulting Defendants from infringing or otherwise violating Deckers'

registered trademark rights in the UGG Trademarks, including at least all injunctive relief previously awarded by this Court to Deckers in the TRO and Preliminary Injunction. Deckers is also entitled to injunctive relief so it can quickly take action against any new websites and online marketplace accounts that are identified, found to be linked to Defaulting Defendants, and selling Counterfeit UGG Products. *See Oakley, Inc. v. Does 1-100,* No. 1:12-cv-9864 (N.D. Ill. Jan. 30, 2013) (unpublished) (Docket Nos. 31 and 32); *Tory Burch LLC, et al. v. Does 1-100,* no. 1:12-cv-07163 (N.D. Ill. Nov. 2, 2012) (unpublished) (Docket Nos. 39 and 40); *Deckers Outdoor Corp. v. Does 1-101*, No. 1:11-cv-07970 (N.D. Ill. May 17, 2012) (unpublished) (Docket Nos. 68 and 69).

## <u>CONCLUSION</u>

Deckers respectfully requests that the Court enter default and default judgment against each Defaulting Defendant, award statutory damages in the amount of two million dollars ($2,000,000) per Defaulting Defendant pursuant to 15 U.S.C. § 1117(c) and enter a permanent injunction order prohibiting Defaulting Defendants from selling Counterfeit UGG Products, permanently transferring the domain names used by Defaulting Defendants to sell Counterfeit UGG Products to Deckers, and transferring all assets in Defaulting Defendants' financial accounts operated by PayPal, Inc. to Deckers.

Dated this 5th day of November 2014.     Respectfully submitted,


    /s/ Justin R. Gaudio
Kevin W. Guynn
Amy C. Ziegler
Justin R. Gaudio
Jessica L. Bloodgood
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
kguynn@gbclaw.net
aziegler@gbclaw.net
jgaudio@gbclaw.net
jbloodgood@gbclaw.net

*Attorneys for Plaintiff Deckers Outdoor Corp.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 5th day of November 2014, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, I will electronically publish the documents on a website to which the Defendant Domain Names that have been transferred to Deckers' control now redirect, and I will send an e-mail to the e-mail addresses identified in Second Amended Schedule A that includes a link to said website.

> \_\_/s/ Justin R. Gaudio_____
> Kevin W. Guynn
> Amy C. Ziegler
> Justin R. Gaudio
> Jessica L. Bloodgood
> Greer, Burns & Crain, Ltd.
> 300 South Wacker Drive, Suite 2500
> Chicago, Illinois 60606
> 312.360.0080
> 312.360.9315 (facsimile)
> kguynn@gbclaw.net
> aziegler@gbclaw.net
> jgaudio@gbclaw.net
> jbloodgood@gbclaw.net
>
> *Attorneys for Plaintiff Deckers Outdoor Corp.*